**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER SHAHADE,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA CHESS FEDERATION, *et al.*,<br><br>    Defendants. | Civil Action No. 24-7909 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendant United States of America Chess Federation ("Defendant" or "U.S. Chess") Motion to Dismiss Plaintiff Jennifer Shahade's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (ECF No. 8), Plaintiff's Cross-Motion to Amend the Complaint (ECF No. 31), and Plaintiff's Motion for Leave to File a Sur-reply (ECF No. 34). Following Defendant's Motion to Dismiss, Plaintiff opposed (ECF No. 24), and Defendant replied (ECF No. 32). Plaintiff then filed a Motion for Leave to File a Sur-reply (ECF No. 34), and Defendant opposed (ECF No. 37). After careful consideration of the parties' submissions, the Court decides these motions without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Court: (1) grants Plaintiff's Motion for Leave to File a Sur-reply; (2) grants Defendant's Motion to Dismiss; and (3) denies, without prejudice, Plaintiff's Cross-Motion to Amend the Complaint.

---

[1] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

I.   **BACKGROUND**

A.   **Factual Background**[2]

Plaintiff is a renowned professional chess player and Woman's Chess Grand Master. (Compl. ¶¶ 1, 44, ECF No. 1 at 8-68.)[3] Defendant United States Chess is the official governing body and nonprofit 501(c)(3) organization for chess players and chess supporters in the United States. (*Id.* ¶¶ 79-82.) From 2006 to 2023, Plaintiff served as an Officer and Director of Women's Programs at U.S. Chess. (*Id.* ¶ 3.)

Plaintiff alleges that in August 2011 and March 2014, Alejandro Ramirez ("Ramirez"), a prominent Chess Grand Master, sexually assaulted her. (*Id.* ¶¶ 2, 53.) At the time, Ramirez was a member of and contractor for U.S. Chess. (*Id.*) Plaintiff "warn[ed]" U.S. Chess about Ramirez's misconduct multiple times in 2020, 2021, and 2022. (*Id.* ¶ 65.) In February 2023, Plaintiff lodged a written complaint, providing further details about at least one of the assaults. (*Id.* ¶ 53.) In that written complaint, Plaintiff stated that Ramirez "unexpectedly attacked me, pushed me against the bed and attempted to forcibly kiss me and press himself against me in a sexual way." (*Id.*)

Plaintiff alleges that despite her complaints, U.S. Chess failed to take any "effective punitive action" against Ramirez. (*Id.* ¶ 2.) As a result, she went public with her allegations, first in a February 2023 post on Twitter naming Ramirez as her assailant, and subsequently in a March 2023 article in the *Wall Street Journal* detailing her allegations and describing the purported culture of harassment in the professional chess industry. (*Id.* ¶¶ 2, 34, 37, 59.) In July 2023, Plaintiff emailed U.S. Chess to further voice her concerns about Ramirez, and U.S. Chess informed her that

---

[2] For the purposes of this Motion to Dismiss, the Court accepts as true and summarizes the facts alleged in the Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] Plaintiff's Complaint is one of three documents included in ECF No. 1, along with the Civil Cover Sheet and Notice and Petition for Removal.

they had "promptly removed" Ramirez from a chess team that had two teenage girls after seeing Plaintiff's public tweet. (*Id.* ¶ 5.)

Plaintiff also alleges other women were sexually harassed or abused by various men affiliated with U.S. Chess (*see id.* ¶¶ 59, 78), and that Plaintiff "became a public whistleblower about the numerous sexual abusers U[.]S[.] Chess allowed to be in [chess] arena[s]" (*id.* ¶ 4). As a result of Plaintiff's whistleblowing activities, Plaintiff alleges that U.S. Chess, among others, engaged in a coordinated campaign of retaliation, defamation, and bullying to damage her reputation and discredit her claims. (*Id.* ¶¶ 6, 87-123.) Plaintiff informed U.S. Chess that her employment with the organization had become untenable (*id.* ¶ 40), and left the organization on or about September 6, 2023 (*id.* ¶¶ 6, 57).

Plaintiff alleges that U.S. Chess further retaliated against her after she left the organization. (*Id.* ¶ 6.) U.S. Chess President, Randy Bauer, publicly posted on Facebook that Plaintiff had failed to diligently pursue her claims or otherwise adhere to internal procedures for lodging complaints. (*Id.* ¶ 57.) Additionally, U.S. Chess promoted an article on its website which casts doubt on and mischaracterizes Plaintiff's claims. (*Id.* ¶¶ 60-65.)

### B. Procedural Background

Plaintiff commenced this action against Defendants U.S. Chess, Randy Bauer, and unidentified individuals and corporations, alleging retaliation, gender bias and discrimination claims under the New Jersey Law Against Discrimination, intentional infliction of emotional distress, defamation and business libel, and invasion of privacy. (*Id.* ¶¶ 89-123.) Plaintiff also alleges U.S. Chess violated the New Jersey Civil Racketeer Influenced Corrupt Organizations Act ("NJ RICO"). (*See generally id.*) With respect to Plaintiff's NJ RICO claim, Plaintiff alleges U.S. Chess conspired to violate NJ RICO by "engaging as a vehicle for . . . [h]uman [t]rafficking" and

3

submitting "fraudulent government filing[s] [in] relation to its 501(c)(3) charitable tax-exempt status." (*Id.* ¶¶ 9-10, 114-123.) Specifically, Plaintiff claims that U.S. Chess uses its 501(c)(3) status "for improper purposes" and "sponsored and encouraged women and children to partake in chess matches where the abuser was present in a position of authority with this knowledge across the United States" which amounts to "human trafficking under federal law [and] a violation of New Jersey Public Policy." (*Id.* ¶ 80.)

U.S. Chess filed a Motion to Dismiss Plaintiff's NJ RICO claim (Count VI) pursuant to Rule 12(b)(6). (Def.'s Moving Br., ECF No. 8). In response, Plaintiff opposed and filed a Cross-Motion to Amend the Complaint. (Pl.'s Opp'n Br., ECF No. 24.) U.S. Chess then filed a reply brief (Def.'s Reply Br., ECF No. 32), and opposed Plaintiff's Cross-Motion to Amend, arguing that any amendment to Plaintiff's Complaint would be futile (Def.'s Opp'n Br., ECF No. 33). Plaintiff then filed a Motion for Leave to File a Sur-reply (ECF No. 34), and U.S. Chess opposed (ECF No. 37). Plaintiff's Motion for Leave to File a Sur-reply will be granted and be considered a part of the record of this case.

**B.   LEGAL STANDARD**

**A.   Rule 12(b)(6) Standard**

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

4

(2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.    Rule 15 Standard**

Under Rule 15, courts should grant motions to amend pleadings "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit embraces a liberal amendment standard, to ensure "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). "[A] general presumption exists in favor of allowing a party to amend its pleadings." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002) (citations omitted). Leave to amend may only be denied if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

5

## III. DISCUSSION

### A. NJ RICO Claim

Count Six of Plaintiff's Complaint alleges violations of the civil NJ RICO statute, N.J.S.A. 2C:41-1 *et seq.*, against U.S. Chess. (Compl. ¶¶ 114-123.) Plaintiff alleges U.S. Chess "formed a pattern of racketeering acts" by allowing male chess players "who abused women and children" to attend matches nationally and internationally and by "receiving donor money fraudulently under the auspices of its 501(c)[(3)]" charitable tax-exempt status. (*Id.* ¶¶ 114-121.)

In moving to dismiss this claim, U.S. Chess makes four primary arguments. First, U.S. Chess argues that Plaintiff's NJ RICO claim fails as a matter of law because it is insufficiently pled under the pleading standards of Rules 8 and 9(b). (Def.'s Moving Br. 6-8, 13-14.) Second, U.S. Chess argues that Plaintiff fails to adequately plead the elements of a NJ RICO claim, including a predicate act and a pattern of racketeering activity. (*Id.* at 10-15.) Third, U.S. Chess argues that Plaintiff lacks standing to bring this claim because Plaintiff fails to plead a cognizable injury. (*Id.* at 16-18.) Finally, U.S. Chess argues that Plaintiff's NJ RICO claim is time-barred under the statute of limitations. (*Id.* at 18-19.) The Court begins by addressing Defendant's argument regarding Plaintiff's standing to bring a NJ RICO claim.

As a threshold matter, to have standing to bring a civil RICO claim, a plaintiff must allege harm to "business or property" and show that the harm was "proximately caused by the RICO predicate acts alleged, *i.e.* that there was a direct relationship between plaintiff's injury and defendant's conduct." N.J. Stat. Ann. § 2C:41-4c; *Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (N.J. Super. Ct. App. Div. 1995). "This requires a showing not only that the defendant's alleged RICO violation was the 'but for' cause or cause-in-fact of [her] injury, but also that the violation was the legal or proximate cause." *Id.* (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265

(1992).) Where a plaintiff's standing is at issue, the court must "examine the chain of events to determine who was directly injured by the predicate RICO acts. If a plaintiff is harmed only in an indirect way by the predicate acts, the plaintiff does not have standing to pursue a RICO claim." *Id.* at 473 (citing *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 828 F. Supp. 287, 296 (D.N.J. 1993)).

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff lacks standing to pursue a civil RICO claim. Plaintiff advances two theories in support of her RICO claim: (1) U.S. Chess acted as a "vehicle" for human trafficking by providing abusers access to victims through chess tournaments (Compl. ¶¶ 9, 121); and (2) U.S. Chess defrauded donors and the federal government by receiving money "under the auspices of its 501(c)(3)" charitable tax-exempt status (*Id.* ¶¶ 9, 121, 122). Plaintiff alleges that as a direct and proximate cause of U.S. Chess's NJ RICO violations, she "sustained damages that will be proven at the time of trial." (*Id.* ¶ 123.) Simply alleging Plaintiff suffered damages or "an injury to business or property" is insufficient to withstand a motion to dismiss. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 WL 2043604, at *11 (D.N.J. July 10, 2009); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (explaining that "a showing of injury [for a RICO claim] requires proof of a concrete financial loss and not mere injury to a[n] intangible property interest"); *Bell v. Dave*, No. 21-11816, 2022 WL 2667017, at *6 (D.N.J. July 11, 2022) (noting that "to adequately plead injury, the complaint must contain allegations of actual monetary loss").

Plaintiff argues in her opposition brief that "she *can* allege injury to her business and reputation" because she was "constructively discharged . . . as a result of coming forward with her allegations publicly" and "defamed by U.S. Chess." (Pl.'s Opp'n Br. 34-35 (emphasis added).) As a preliminary point, it is axiomatic that Plaintiff may not amend her complaint in an opposition to

7

a motion to dismiss. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).[4] Nonetheless, assuming *arguendo* that Plaintiff adequately pled damages stemming from her constructive discharge and defamation as a result of U.S. Chess's NJ RICO violations, such alleged harm would still be insufficient to sustain a civil RICO claim because this monetary harm was not proximately caused by either of the alleged predicate acts of human trafficking or financial fraud. *Interchange State Bank*, 668 A.2d at 469 (dismissing plaintiff's NJ RICO claim for lack of standing because plaintiff "failed to establish that the alleged racketeering scheme was the proximate cause of its losses").

With respect to Plaintiff's theory of financial fraud, assuming U.S. Chess defrauded donors and the federal government, it is unclear how this predicate act could have caused *Plaintiff* any monetary harm. *In re Schering-Plough*, 2009 WL 2043604, at *16 (dismissing NJ RICO claim for lack of standing because "the Court would have to suspend disbelief" to conclude consumers plaintiffs suffered an injury to *their* business or property as a result of defendant's purported misconduct). Similarly, regarding Plaintiff's theory of human trafficking, even if Plaintiff and other victims were generally harmed as a result, Plaintiff's monetary harm—*i.e.*, her constructive discharge and defamation—was not directly caused by U.S. Chess's purported human trafficking. Rather, as Plaintiff explains:

> As a result of [U.S. Chess's] worship of the male Grand Masters over the vulnerable, and the worship of the monetary big-name donors over the victimized, U[.]S[.] Chess enabled the sexual assault

---

[4] Plaintiff attaches two affidavits—one from a third-party alleged victim and one from Plaintiff—in support of Plaintiff's Opposition. (*See* Decl. of Alleged Victim # 1, ECF No. 24-5; Decl. of J. Shahade, ECF No. 24-6.) "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings" unless the extraneous documents are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). Because these affidavits introduce new allegations that were not integral to or relied upon in the Complaint, the Court does not consider them when considering the instant Motion to Dismiss.

> on victim [Plaintiff] and others in the first instances, then later her employability, stature in the chess community and worldwide her reputation.

(Compl. ¶ 39).

In other words, Plaintiff alleges because U.S. Chess fostered a culture of supporting male Grand Masters who were accused of sexual misconduct, certain male Grand Masters were able to sexually assault Plaintiff and others, which in turn led to Plaintiff becoming a public whistleblower, and in turn led to her constructive discharge and defamation. (*See id.*) By Plaintiff's own admissions, there is simply no "direct relationship" between Plaintiff's alleged business or property harm and U.S. Chess's alleged violations of NJ RICO. *Interchange State Bank*, 668 A.2d at 472 (citation omitted). At best, Plaintiff was "harmed only in an indirect way by the predicate acts [and] . . . does not have standing to pursue a RICO claim."[5] *Id.* at 473. Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's NJ RICO claim.[6]

### B. Cross-Motion to Amend the Complaint

In response to Defendant's Motion to Dismiss, Plaintiff filed a Cross-Motion to Amend her pleading pursuant to Rule 15. (ECF No. 34.) Plaintiff primarily seeks to add allegations regarding an anonymous victim ("AV # 1") who alleges she was stalked and sexually assaulted by Chess Grand Master Timur Gareyev ("Gareyev") at a U.S. Chess tournament in 2021. (*See*

---

[5] In Plaintiff's Sur-reply, Plaintiff fails to address the issue of standing and instead focuses on rebutting Defendant's allegation that "[Plaintiff] either did not report the conduct of Ramirez to U.S. Chess and/or that there were no further victims." (Pl.'s Sur-Reply Br. 2, ECF No. 34-1.) Whether or not Plaintiff reported Ramirez's conduct, or whether there were other victims, Plaintiff still fails to plead a cognizable injury. Indeed, the Court presumes for the purposes of this motion that Plaintiff did report Ramirez's conduct to U.S. Chess on multiple occasions (*see* Compl. ¶¶ 53, 65), and that there were other victims of sexual assault (*see id.* ¶¶ 59, 78), but nonetheless concludes Plaintiff lacks standing to bring a civil RICO claim.

[6] Because the Court concludes Plaintiff lacks standing to bring a civil RICO claim, the Court does not reach the merits of Defendant's alternative arguments.

Proposed Am. Compl. ¶¶ 89-113, ECF No. 24-1.) Plaintiff also seeks to add allegations regarding "other" unidentified women who were allegedly assaulted by Ramirez or Gareyev, but were "discouraged from reporting the offenses," or reported them to U.S. Chess and the organization failed to take them seriously. (*Id.* ¶¶ 103-113.)

A district court may deny a plaintiff leave to amend a pleading "based on bad faith or dilatory motives, . . . repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 (citation omitted). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (citing *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)).

Plaintiff's proposed amendments fail to address the deficiencies discussed in this Memorandum Opinion. Plaintiff's additional allegations include testimony from unidentified third parties who were allegedly harmed and sexually assaulted by chess players affiliated with U.S. Chess, but otherwise wholly fail to connect *Plaintiff's* alleged business or property harm to the alleged predicate RICO acts.[7] (*See* Proposed Am. Compl. ¶¶ 89-113.) Accordingly, Plaintiff's Cross-Motion to Amend is denied as futile. *See Butterline v. Bank of N.Y. Mellon Trust Co., Nat'l Ass'n*, 841 F. App'x 461, 463-64 (3d Cir. 2020) ("Although '[m]otions to amend under Rule 15

---

[7] Plaintiff also argues that the additional allegations from AV # 1 plead new predicate acts of "obstructing justice and tampering with a witness." (Pl.'s Opp'n Br. 4-5.) Assuming *arguendo* Plaintiff adequately pleads these new predicate acts, Plaintiff's allegations are premised on a third-party's testimony and harm, and again fail to establish Plaintiff's standing to bring a civil RICO claim.

10

are typically granted liberally,' a court may deny leave to amend when the amendment would be futile" (citation omitted)).

IV. **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Leave to File a Sur-reply is granted, Defendant's Motion to Dismiss is granted, and Plaintiff's Cross-Motion to Amend her Complaint is denied. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE