Joseph C. DeBlasio, Esq. (Bar ID #018081996)
Michael A. Tecza, Esq. (Bar ID #0335572021)
**JACKSON LEWIS P.C.**
200 Connell Drive
Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
*Attorneys for Defendants United States Chess*
*Federation d/b/a US Chess and Randy Bauer*

Rebecca M. McCloskey, Esq. (NY Bar ID #4183448)
Susan D. Friedfel, Esq. (NY Bar ID # 4139382)
**JACKSON LEWIS P.C.**
44 South Broadway, 14th Floor
White Plains, New York 10601
Tel: (914) 872-8060
*Attorneys for Defendants United States Chess*
*Federation d/b/a US Chess and Randy Bauer*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER SHAHADE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA CHESS FEDERATION an Illinois Corporation, a/k/a UNITED STATES CHESS FEDERATION, d/b/a US CHESS, RANDY BAUER, individually and in his capacity as Board President, PETER TAMBURRO, a New Jersey resident, individually, JOHN and JANE DOES 1-100, ABC COMPANIES 1-100, individually Persons or Entities Defendants or unnamed or Unknown including any such Civil Rico co-conspirators,<br><br>Defendants. | Hon. Michael A. Shipp, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J<br>Civil Action No. 3:24-cv-07909 |

**DEFENDANT US CHESS'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Of Counsel and On the Brief:
    Joseph C. DeBlasio, Esq.

On the Brief:
    Michael A. Tecza, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL ARGUMENT ................................................................................................ 2

I.    Plaintiff's Proposed Amendment Would Be Futile ........................................... 2

II.   The Allegations in Plaintiff's Proposed Amended Complaint Do Not
      Establish the Elements of Her RICO Claims. ................................................... 5

      A.    Plaintiff Does Not Have Standing To Bring Her RICO
            Claims. ................................................................................................... 5

      B.    Amendment Would Be Futile Because Plaintiff's New
            Allegations Cannot Establish A RICO Claim Based On
            Assault .................................................................................................... 7

      C.    Amendment Would Be Futile Because Plaintiff's New
            Allegations Do Not Establish That Defendants Tampered
            with a Witness. ....................................................................................... 8

      D.    Amendment Would Be Futile Because Plaintiff's
            Allegations Do Not Establish US Chess Acted In A Way
            Which Obstructed Justice. ..................................................................... 9

      E.    Amendment Would Be Futile Because Plaintiff's
            Allegations Do Not Establish A Claim For Endangerment of
            the Welfare of a Child. ......................................................................... 11

      F.    Amendment Would Be Futile Because The Proposed New
            Allegations Do Not Establish That Defendants Engaged In
            Human Trafficking Or Fraud. .............................................................. 13

CONCLUSION ......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blizzard v. Exel Logistics N. Am., Inc.*,
    Civil Action No. 02-4722 (FLW), 2005 U.S. Dist. LEXIS 28160 (D.N.J Nov.
    15, 2005) .................................................................................................................5, 6

*Carrier v. Bank of Am., N.A.*,
    Civ. No. 12-104 (RMB/JS), 2014 U.S. Dist. LEXIS 12138 (D.N.J. Jan. 31,
    2014) ............................................................................................................................7

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000), *cert. denied*, 533 U.S. 929, 121 S. Ct. 2551, 150
    L. Ed. 2d 718 (2001) ...................................................................................................7

*Interchange State Bank v. Veglia*,
    668 A.2d 465 (App. Div. 1995), *cert denied*, 144 N.J. 377 (1996) ..........................6

*N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*,
    319 N.J. Super. 435 (App. Div. 1998) ....................................................................2, 3

*Prime Accounting Dep't v. Twp. of Carney's Point*,
    212 N.J. 493 (2013) ....................................................................................................2

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
    359 F.3d 226 (3d Cir. 2004).........................................................................................7

*Reider v. State*,
    221 N.J. Super. 547 (App. Div. 1987) .......................................................................3

*Sharifi v. Twp. Of E. Windsor*,
    Civil Action No. 21-18097, 2023 U.S. Dis. LEXIS 30096 (N.D.J. Feb. 23,
    2023) ........................................................................................................................3, 4

*State v. Ball*,
    268 N.J. Super. 72 (App. Div. 1993), *aff'd* 141 N.J. 142 (1995)...............................5

*State v. Camillo*,
    382 N.J. Super. 113 (App. Div. 2005) ..............................................................10, 11

*State v. Crawley*,
    187 N.J. 440 (N.J. 2006) ..........................................................................................11

*State v. Galloway*,
    133 N.J. 631 (N.J. 1993) ...........................................................................................12

*State v. Overton*,
357 N.J. Super. 387 (App. Div. 2003) ...................................................................12

*Trans USA Prods. V. Howard Berger Co.*,
Civil Action No. 07-5924, 2008 U.S. Dist. LEXIS 25370, (D.N.J. Mar. 28,
2008) ...................................................................................................................2

**Statutes**

N.J.S.A. 2C:41-1(d) ...................................................................................................13

N.J.S.A. § 2C:24-4 ....................................................................................................12

N.J. Stat. § 2C:24-4(a)(1) .........................................................................................11

N.J. Stat. § 2C:24-4(a)(2) .........................................................................................12

N.J. Stat. § 2C:29-1(a) ........................................................................................10, 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................................................................2

Fed. R. Civ. P. 15(a)(2)................................................................................................2

Federal Rule 12(b)(6)...................................................................................................1

Local Civil Rule 15.1...................................................................................................1

## <u>PRELIMINARY STATEMENT</u>

Three months after Plaintiff's Cross-Motion to Amend the Complaint was denied by Judge Shipp (Dkt. No. 38), Plaintiff seeks to re-make her motion to file a proposed amended complaint containing nearly the same deficient assertions as the prior proposed amended complaint. (Dkt. No. 44). This time, other than filing a notice of motion and a certificate by her counsel attaching the proposed First Amended Complaint and the Court's June 3, 2025 scheduling order, Plaintiff has not filed a memorandum of law setting forth any legal support for the motion.

Defendant opposes Plaintiff's motion to amend because Plaintiff offers literally no argument for why she should be allowed to amend at this time, and even if she had, the proposed amendments are still insufficient to support Plaintiff's RICO Claim.

The question before the Court is whether Plaintiff has established a good reason to allow her to Amend the Complaint after Defendant has already filed an Answer to the original Complaint and a Motion to Dismiss. In this case, there is no legitimate basis to amend because the "new," embellished allegations were already known or knowable before she filed her original Complaint.

More importantly, any amendment would be futile because Plaintiff's proposed First Amended Complaint ("FAC") fails to remedy the deficiencies in her Complaint.[1] The amendments in the FAC consists of allegations largely relaying what Plaintiff was "told" by un-named individuals. The new vague, hearsay allegations do not satisfy the pleading requirements necessary to survive a motion to dismiss under Federal Rule 12(b)(6). These allegations fail to provide additional information that is remotely relevant to the dismissal of the RICO claim because there

---

[1] The FAC should not be entertained for the additional reason that it fails to comply with Local Civil Rule 15.1, which requires that a party who seeks leave to amend shall attach to the motion: "(1) a copy of the proposed amended pleading; and (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend . . . ." A review of Plaintiff's moving papers indicates that Plaintiff has not attached a redlined version of the proposed amended pleading. Therefore, Plaintiff's motion to amend should be denied for failure to comply with the requirements of Local Civil Rule 15.1.

are still no allegations that US Chess or Randy Bauer engaged in sexual assault or conspired with anyone else who engaged in sexual assault.

Ultimately, Plaintiff's RICO claim is a transparent attempt to extend the time and scope of this case to capture individuals who are not parties and events that allegedly occurred well before the statute of limitations. Plaintiff is pursuing separate claims to recover damages for her own individual claims for employment discrimination, retaliation, infliction of emotional distress, defamation, business libel, and false light/invasion of privacy. That is what this case is about. The RICO claim is just a creative, destructive sideshow attempting to wreak havoc on an otherwise straightforward case. The Court should not permit Plaintiff to pursue a separate RICO claim based on alleged conduct that she herself does not claim to have been involved in, much less damaged by.

## LEGAL ARGUMENT

### I.    Plaintiff's Proposed Amendment Would Be Futile

The Court should deny Plaintiff's Motion to Amend the Complaint pursuant to Fed. R. Civ. P. 15(a)(2) "on the grounds that the amendment would cause unjust delay or prejudice or that amendment would be futile." *Trans USA Prods. V. Howard Berger Co.*, Civil Action No. 07-5924, 2008 U.S. Dist. LEXIS 25370, at *7 (D.N.J. Mar. 28, 2008). The decision to grant or deny leave is "best left to the sound discretion of the trial court in light of the factual situation existing at the time each motion is made." *Prime Accounting Dep't v. Twp. of Carney's Point*, 212 N.J. 493, 510 (2013) (finding that the decision to deny leave to amend is within the sound discretion of the court).

Plaintiff's motion should be denied as futile because the proposed amended complaint still fails to state a claim pursuant Fed. R. Civ. P. 12(b)(6). New Jersey courts have not hesitated to deny a motion to amend when an amendment to a complaint would be futile. *See N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 319 N.J. Super. 435, 451 (App. Div. 1998) (affirming denial of

amended pleading asserting new theories that were not supported by record). The sole inquiry for the Court is whether the facts alleged are legally sufficient to state a claim upon which relief may be granted. *Id*. Dismissal is mandated when the allegations are insufficient to support a claim. *Reider v. State*, 221 N.J. Super. 547, 552 (App. Div. 1987).

In this case, Plaintiff seeks to add four new legal theories to support a RICO claim, namely "US Chess and other named and unnamed co-conspirators committed such predicate acts described herein which facts describes the crime of Assault, […] Tampering with a Witness, Obstruction of Justice, [and] Endangering the Welfare of a Child". (FAC ¶ 123 of Count Six of the FAC[2].) Each of these theories is based on allegations already known or knowable prior to July 16, 2024 when Plaintiff filed her original Complaint. More importantly, each of these theories is legally deficient for failure to state a predicate act necessary for a RICO claim, so Plaintiff's proposed amendment would be futile.

Most of the substantive amendments in the FAC are conclusory and unspecific, just like the allegations in her original Complaint. Plaintiff's allegations do not specifically identify the individuals who were either alleged bad actors or individuals who made the statements on which Plaintiff now relies to make her claim.

For example, the FAC includes allegations based on the experiences of an "anonymous individual" and does not specify which US Chess representative this "anonymous individual" spoke with. (FAC ¶ 117, "A US Chess representative spoke to AV#1 and directed her <u>not to call the police</u>…"). Vague allegations that do not implicate specific individuals are not enough to overcome a motion to dismiss. *See Sharifi v. Twp. Of E. Windsor*, Civil Action No. 21-18097,

---

[2] We note the numbering of paragraphs in Plaintiff's proposed First Amended Complaint appears to be in error as the paragraphs contained in Count Four of the FAC and onwards begin numbering from Paragraph "104" when the prior paragraph contained in Count Three of the FAC ended at Paragraph "149."

2023 U.S. Dis. LEXIS 30096, at *19 (N.D.J. Feb. 23, 2023) ("plaintiff cannot survive a motion to dismiss based on broad, conclusory allegations, unsupported by specific facts implicating specific defendants").

Other allegations are similarly vague as to the specifics of the individuals referred to in the allegations and when the alleged events occurred. For example, Plaintiff alleges:

- "AV#1 *believes* there are other victims" (FAC ¶ 123) (emphasis added);

- "One witness told Shahade that Ramirez was known to bring a 'sex slave' to tournaments." (FAC ¶ 128);

- "Another US Chess member reports that she personally informed US Chess about concerns relative to Ramirez in 2017." (FAC ¶ 129);

- "A US Chess board member raised concerns about Ramirez at a US Chess board meeting in late 2018 or 2019…This Board member was allegedly warned by another board member to be quiet about such things due to liability concerns." (FAC ¶ 131);

- "A former US Chess Executive told Shahade to being informed of concerns relative to Ramirez around 2017… This individual was surprised that this communication was not reflected in US Chess statements and board member communications." (FAC ¶ 132).

The obvious hearsay and the lack of specificity in the FAC allegations means that Plaintiff cannot establish the elements of a RICO claim. Plaintiff has still not alleged that she or anyone else was subject to "human trafficking" as defined by the statute, nor does she allege that US Chess took any affirmative actions in concert with Ramirez or other individuals to further a collective goal to engage in any bad acts.  The same holds true for Plaintiff's fraud claim – Plaintiff herself does not claim to have been defrauded, nor does she claim that US Chess conspired with Ramirez or other individuals to withhold sensitive, confidential information that should have been made public.

II.    **The Allegations in Plaintiff's Proposed Amended Complaint Do Not Establish the Elements of Her RICO Claims.**

To succeed on any of the four new RICO theories in the FAC, Plaintiff must prove five elements to sustain a claim under New Jersey's RICO statute:

> (1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise [a "predicate act"]; and (5) that he or she participated through a pattern of racketeering activity.

*State v. Ball*, 268 N.J. Super. 72, 99 (App. Div. 1993)(Ball I), *aff'd* 141 N.J. 142 (1995).

To establish a RICO conspiracy, a plaintiff must further show that: (1) "a defendant agreed to participate directly or indirectly in the conduct of the affairs of the enterprise by agreeing to commit, or to aid other members of the conspiracy to commit, at least two racketeering acts[,]" (a "predicate act"); and (2) the defendant "acted knowingly and purposely with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective." *Ball*, 141 N.J. at 180 (quoting *Ball I*, 268 N.J. Super. at 99-100).

Even assuming all of the proposed new allegations in the FAC are true, there is still no actual conspiracy alleged between US Chess and any individual(s) who carried out any specific predicate acts on behalf of a RICO enterprise, so the RICO claim cannot survive.

A.    **Plaintiff Does Not Have Standing To Bring Her RICO Claims.**

As argued at length in Defendant's Motion to Dismiss (Dkt. 8), Plaintiff does not have standing to bring a RICO claim on the basis of any allegations she attributes to other victims, and the FAC does not cure the original deficiencies. In order to establish standing under the New Jersey RICO Act, Plaintiff must show that she was damaged in her "business or property by reason of a violation of N.J.S. 2C:41-2." *Blizzard v. Exel Logistics N. Am., Inc.*, Civil Action No. 02-4722 (FLW), 2005 U.S. Dist. LEXIS 28160, at *32 (D.N.J Nov. 15, 2005). Plaintiff must show that her

harm was "'proximately caused by the NJRICO predicate acts alleged. i.e., that there was a direct relationship between plaintiff's injury and defendant's conduct.'" *Id.* at *33 (quoting *Interchange State Bank v. Veglia*, 668 A.2d 465, 472 (App. Div. 1995), *cert. denied*, 144 N.J. 377 (1996)). Plaintiff cannot even establish the requisite injury, much less show that the injury had a direct relationship with US Chess's alleged conduct.

The majority of Plaintiff's new allegations in her FAC relate to the experiences by an anonymous victim ("AV#1"). In fact, Plaintiff recounts an incident between AV#1 and Grandmaster Timur Gareyev in twelve of the allegations. (FAC ¶¶ 112-123). Not once in any of these allegations does Plaintiff allege that she was harmed in any way by Gareyev's behavior towards AV#1. Plaintiff also alleges, non-specifically, that:

- "*Other victims* have come forward to attest that they, too, were assaulted, and that they informed US Chess, and US Chess did not appropriately address their concerns." (FAC ¶ 110);

- "Following her public tweet about GM Ramirez, Shahade began to receive unsolicited messages from *other women chess players who had been assaulted by Ramirez* some of whom were minors at the time." (FAC ¶ 124);

- *One victim* told Shahade that US Chess warned her not to report to police an assault of her by GM Tim Gareyev because it would make US Chess look bad. Ramirez's conduct including public groping of *minor girls* was apparently an "open secret" which was witnessed and reported to US Chess by several people." (FAC ¶ 125).

(emphasis added to all). None of these allegations pertain to any alleged harm Plaintiff has experienced. Because Plaintiff has not established that she has been harmed in any of the alleged predicate acts, and to the extent these allegations are used to support her four new theories of liability under RICO, the claims should be dismissed for lack of standing and the proposed amendment would be futile.

**B.      Amendment Would Be Futile Because Plaintiff's New Allegations Cannot Establish A RICO Claim Based On Assault.**

Plaintiff's FAC vaguely alleges that "US Chess and other named and unnamed co-conspirators committed such predicate acts described herein as Assault…" and attempts to sustain this claim by further alleging that she and several unidentified victims were sexually assaulted by perpetrators allegedly affiliated with US Chess. (FAC ¶ 123 of Count Six of the FAC). Since Plaintiff does not have standing to bring claims on behalf of other victims because she did not suffer an injury from the allegations related to the other victims, Plaintiff's support for her assault claim is limited to her allegations that she was assaulted by Ramirez. These allegations fail because they are time-barred.

"The statute of limitations in New Jersey for civil liability claims under New Jersey's RICO statute is four years after the commission of the offense." *Carrier v. Bank of Am., N.A.*, Civ. No. 12-104 (RMB/JS), 2014 U.S. Dist. LEXIS 12138, at *22 (D.N.J. Jan. 31, 2014). In determining when a RICO claim accrues, Courts in the Third Circuit have applied the "injury discovery rule." *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.,* 359 F.3d 226, 233 (3d Cir. 2004). Under that rule, the Court "must determine when the plaintiffs knew or should have known of their injury." *Forbes v. Eagleson,* 228 F.3d 471, 484 (3d Cir. 2000), *cert. denied*, 533 U.S. 929, 121 S. Ct. 2551, 150 L. Ed. 2d 718 (2001). "In addition to the injury, the plaintiffs must also have known or should have known of the source of their injury. . . . [N]othing more than these two requirements [is] required to trigger the running of the four-year limitations period[.]" *Prudential,* 359 F.3d at 233 (internal quotations and citation omitted).

Plaintiff filed her original Complaint on July 16, 2024, so any allegations occurring prior to July 16, 2020 are time-barred and must be dismissed. Plaintiff alleges that she was sexually assaulted twice by Grand Master Alejandro Ramirez, once in August 2011 and again in March

2014. (FAC ¶ 2, 19, 53). She also alleges that on August 4, 2018, she was "harassed by one of the awardees… who **demanded a kiss from Shahade after he received his award**." (FAC ¶ 98) (emphasis in original). All three allegations of inappropriate conduct against Plaintiff are time-barred and therefore her RICO claim based on assault should be dismissed.

### C.    Amendment Would Be Futile Because Plaintiff's New Allegations Do Not Establish That Defendants Tampered with a Witness.

Plaintiff's FAC fails to plead plausible factual allegations to support her new theory that Defendants engaged in Witness Tampering. The FAC is riddled with factually unsupported accusations and wholly conclusory language, based on inflammatory language and unfounded affidavits of non-parties.  Plaintiff offers no actual proof of a plausible RICO claim based on "Tampering with a Witness," and her unwavering  reliance on a non-party affidavit and unknown conspirators establishes the futility of her proposed submission.

To avoid dismissal, Plaintiff must set forth enough factual allegations in the FAC to show that the claim is plausible, not merely possible.  There are abundant reasons why Plaintiff's claim is fatally flawed and futile. First, Plaintiff relies on hearsay and speculation with no factual support. Second, in the same vein, there is no temporal scope to these distorted "facts." Rather, Plaintiff is lumping together as much information as possible, by collecting and rehashing self-serving anecdotes and any information she could procure anyone she can find to support her claim. Yet, even after the benefit of having the opportunity to learn from Defendant US Chess's motion to dismiss Plaintiff's RICO claim, she *still* fails to realize that none not one of the proposed allegations actually pertain to her:

- These women reported to her that they were either discouraged from reporting the offenses, or if they did report what had happened to them, nothing was done. (FAC ¶ 124).

- One victim told Shahade that a US Chess official warned her not to report to police an assault of her by GM Timur Gareyev because it would make US Chess look bad. (FAC ¶ 125).

- A US Chess representative spoke to AV#1 and directed her not to call the police because the assault was not on camera and it was "best for US Chess to handle it internally." (FAC ¶ 117).

Plaintiff's allegations are solely related to alleged incidents that *were told to her* (likely in a desperate attempt to save her claims, since none of these allegations are pled in her operative Complaint), which she never witnessed, experienced, or impacted her directly. It is a legal impossibility for Plaintiff to establish the necessary requirements for claiming a RICO violation on the basis of tampering with a witness for this exact point: (1) There are no allegations establishing a predicate act attributable to Plaintiff; (2) similarly, she cannot establish a pattern of racketeering as she has no predicate act to corroborate a pattern; and (3) Plaintiff fails to plead, articulate, or proffer, any direct injury (or proximate cause) to her business or property attributable to Defendants' alleged conduct. Plaintiff cannot proclaim herself as a champion for every purported victim and be compensated for it simply because she filed a lawsuit. At minimum, Plaintiff is required to plead allegations that are plausible and that injured her directly, a requirement she has failed to satisfy. Thus, since the FAC has not set forth any plausible predicate act of tampering with a witness, a pattern of racketeering, or that Plaintiff suffered any injury, her RICO claim is futile.

### D.     Amendment Would Be Futile Because Plaintiff's Allegations Do Not Establish US Chess Acted In A Way Which Obstructed Justice.

Plaintiff cannot establish the elements of her Obstruction of Justice RICO claim because none of her allegations allege that the actions US Chess took after receiving complaints about Ramirez and Gareyev obstructed any administration of law or other governmental function.

A person commits the offense of obstructing administration of law or other governmental function:

> if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function *by means of flight, intimidation, force, violence or physical interference or obstacle, or by means of an independently unlawful act.*

N.J. Stat. § 2C:29-1(a) (emphasis added). "This section does not apply to failure to perform a legal duty other than an official duty, or any means of avoiding compliance with law without affirmative interference with governmental functions." *Id*. The statue mandates that some physical interference is required. *See State v. Camillo*, 382 N.J. Super. 113, 118 (App. Div. 2005) ("simply obstructing, impairing or perverting the administration of law or the governmental function" is not a statutory violation).

Assuming Plaintiff's references to police and reporting complaints illustrate her attempt to form an Obstruction of Justice claim, Plaintiff still does not allege that US Chess purposely acted in any way which obstructed an ongoing administration of law. Plaintiff broadly alleges that:

- "A US Chess representative spoke to AV#1 and directed her not to call the police because the assault was not on camera and it was 'best for US Chess to handle it internally.'" (FAC ¶ 96);

- "US Chess then declined to investigate [the Ethics Complaint] since the assault occurred outside the hotel where the US Chess event was being conducted." (FAC ¶ 97);

- "Following her public tweet, Shahade began to receive unsolicited messages from other women chess players who had been assaulted by Ramirez some of whom were minors at the time. These women were either discouraged from reporting the offenses or if they did report what had happened to them, nothing was done." (FAC ¶ 103);

- "One victim told Shahade that US Chess warned her not to report to police an assault of her by GM Timur Gareyev because it would make US Chess look bad." (FAC ¶ 104).

Plaintiff's allegations fail to establish the two elements of this claim: (1) an actual administration of law; and (2) physical interference. First, Plaintiff has not alleged there is any on-going investigation or administration of law. "Administration of law" generally requires the police, or other public servant, are acting under color of their authority and in good faith. *State v. Crawley*, 187 N.J. 440, 450 (N.J. 2006). She does not allege that herself or any of the victims have already filed a complaint with a governmental agency or with the Courts, much less that any active "administration of law" is occurring.

Second, Plaintiff's allegations do not establish that US Chess used physical force, obstruction, or physical interference to prevent the alleged victims from going to the police. Merely instructing someone to not go to the police, which US Chess denies happened, is not enough to establish N.J. Stat. § 2C:29-1(a). *See Camillo*, 382 N.J. Super at 118 (finding that defendant did not violate N.J. Stat. § 2C:29-1(a) because he only refused to provide information to the police trooper but did not physically interfere with the Trooper's duties). Therefore, Plaintiff's Obstruction of Justice claim must be dismissed.

### E.    Amendment Would Be Futile Because Plaintiff's Allegations Do Not Establish A Claim For Endangerment of the Welfare of a Child.

In another attempt to shock her audience, Plaintiff includes allegations of endangerment of the welfare of children in her string of baseless claims against US Chess. Plaintiff has not plausibly alleged that US Chess engaged conduct which caused harm to the children in question, a crucial element of the claim.

There are two variations of a claim for endangerment of the welfare of a child. N.J. Stat. § 2C:24-4(a)(1) sets forth that:

> any person having a legal duty for the care of a child or who has assumed
>
> responsibility for the care of a child who engages in sexual conduct which would

impair or debauch the morals of the child is guilty of a crime of the second degree.

Any other person who engaged in conduct or who causes harm as described in this

paragraph to a child is guilty of a crime of the third degree.

N.J. Stat. § 2C:24-4(a)(2) sets forth that:

any person having a legal duty for the care of a child or who has assumed

responsibility for the care of a child who causes the child harm that would make

the child an abused or neglected child… is guilty of a crime of the second degree.

Any other person who engaged in conduct or who causes harm as described in this

paragraph to a child is guilty of a crime of the third degree.

First, Plaintiff has not alleged that US Chess has legal duty nor has assumed responsibility for the care of the minors who participate in its events. US Chess is certainly not the parent or guardian of the minors nor does it have a "general and ongoing responsibility for the care of the child" that arose legally or from informal arrangements. *State v. Galloway*, 133 N.J. 631, 661 (N.J. 1993). Other than alleging that minor children played for US Chess, Plaintiff does not allege that US Chess had any duty to care of the children within the meaning of the statute. (FAC ¶ 40).

Additionally, Plaintiff cannot rely on conclusory allegations that US Chess's conduct "enabled women and minors to be assaulted" (FAC ¶ 62) because such allegations do not establish that US Chess "knowingly" did anything which would have caused the minors harm as defined in N.J.S.A. § 2C:24-4. Courts in the Third Circuit have read a mental state requirement into the statute, finding that perpetrators have to act "knowingly" to be found guilty of endangering the welfare of a child. *State v. Overton*, 357 N.J. Super. 387, 393 (App. Div. 2003) ("the child endangerment… statute require[s] a conscious and knowing *action* by defendant"). Besides restating vaguely and baselessly that "US Chess and its agents failed to protect" the minors,

Plaintiff has not alleged US Chess took action knowing that it would cause harm to the minors. (FAC ¶¶ 81, 105: US Chess failed to "protect its female and minor members from predatory behaviors"). Plaintiff's RICO claim on the basis of endangerment of the welfare of a child does not meet the pleading standards necessary to defeat a motion to dismiss.

## F.  Amendment Would Be Futile Because The Proposed New Allegations Do Not Establish That Defendants Engaged In Human Trafficking Or Fraud.

Finally, amending the Complaint would be futile as to Plaintiff's currently pending RICO claim because Plaintiff herself was not a victim of a conspiracy under either current RICO theory – she does not allege that she was a victim of human trafficking, and she does not allege that she was defrauded into making monetary donations to US Chess.

A RICO claim requires an enterprise, a pattern of racketeering activity, and a defendant's actual participation in the conduct of the affairs of the enterprise (a "predicate act").  In addition, under the RICO statute, "[a] 'pattern of racketeering activity' requires '[e]ngaging in at least two incidents of racketeering conduct' that 'embrace criminal conduct' and are interrelated." N.J.S.A. 2C:41-1(d).

For all of the reasons set forth in US Chess's Motion to Dismiss (Dkt. 8), Plaintiff's RICO claim based on either Fraud or Human Trafficking should be dismissed because US Chess's alleged inaction is legally insufficient to establish the unlawful racketeering activity that Plaintiff's RICO claim requires.

The FAC seeks to avoid dismissal of Plaintiff's RICO claim based on "Fraud" by adding the following allegations:

- 131: "A US Chess board member raised concerns about Ramirez at a US Chess board meeting in late 2018 or 2019" and "it was allegedly not recorded which contradicts US Chess requirements and representations made on their publicly filed Tax returns."

- ¶132: "A former US Chess executive admitted to Shahade to being informed of concerns relative to Ramirez around 2017 and this was relayed to the US Chess general counsel.  This individual was surprised that this communication was not reflected in US Chess statements and board member communications."

- ¶134: "US Chess promoted abusers, harassers and molesters to solicit donations, entry fees, membership fees and other income."

There is zero specificity in these hearsay allegations, even assuming (as we must) that they are true.  Vague allegations about an unnamed board member allegedly raising unspecified concerns, at a board meeting Plaintiff did not attend, cannot prove that US Chess's tax filings are fraudulent.  To the extent Plaintiff is faulting US Chess for failing to publicly disclose allegations, it is simply not fraudulent to keep confidential the sensitive information disclosed in an internal investigation into sexual assault allegations.

The FAC also seeks to avoid dismissal of Plaintiff's RICO claim based on "Human Trafficking" by adding the following allegations concerning individuals who are not asserting claims in this case, primarily about a man who is not alleged to have ever touched Plaintiff:

- ¶¶ 114, 116, 117: the anonymous victim "informed US Chess in 2019 about concerns over GM Gareyev as he had been inappropriate with her" and "Gareyev sexually assaulted her while she was assisting his friends in removing him from the hotel where the US Chess tournament was being conducted" and "she reported the incident to US Chess and the directors of the tournament."

- ¶¶ 117: "A US Chess representative spoke to [the anonymous victim] and directed her not to call the police because the assault was not on camera and it was 'best for US Chess to handle it internally.'"

- ¶¶ 118 & 119: US Chess suggested the anonymous victim "file an Ethics Complaint through US Chess, which she did.  US Chess then declined to investigate since the assault occurred outside the hotel where the US Chess event was being conducted."

- ¶¶ 112 & 120: the anonymous victim reported the assault to US Chess who then "assigned an official to escort her around the playing area in case Gareyev appeared" and at other events and tournaments, "even though he had been told to avoid them."

- ¶ 121: in 2021, Gareyev went to a hotel in Las Vegas where the anonymous victim was with her son who was competing in a US Chess event and he sexually assaulted

her and attempted to grab her breasts, which she reported to the tournament organizer who provided her with an escort.

- ¶ 122: Gareyev threatened the anonymous victim at a chess event in Cherry Hill, New Jersey, which she reported to the police.

The FAC also add a few additional allegations about Ramirez, which are almost entirely duplicative of the allegations in her original Complaint:

- ¶ 115: in 2019, the anonymous victim "informed US Chess about misconduct concerns regarding GM Ramirez"

- ¶¶ 110 & 124: "Shahade began to receive unsolicited messages from other women chess players who had been assaulted by Ramirez" who were "either discouraged from reporting the offenses or if they did report what happened to them, nothing was done" and "other victims" came forward and US Chess "did not appropriately address their concerns"

- ¶ 130: Plaintiff and her brother "tried to speak to US Chess officials and employees" to "raise alarms" on several occasions about Ramirez

- ¶ 133: "US Chess sent Ramirez to a US Chess endorsed event in Seattle, the Pan Ams, where he connected with a US Chess committee to discuss starting a new event for girls and women" and a photo was posted of Ramirez with female chess players in bathing suits.

The FAC also includes some especially farfetched allegations of rank hearsay and unfounded gossip that sound bad but do not actually support her legal claims: Ramirez's "public groping of minor girls was apparently an 'open secret' which was witnessed and reported to US Chess by several people" (¶ 125); "all four members of the US Chess accessibility committee resigned at once to protest what they termed as US Chess 'sweeping sexual assaults under the rug'" (¶ 126); "Janelle Losoff publicly accused US Chess of hushing up information regarding the actions and complaints against Grandmaster Timur Gareyev" (¶ 127); "one witness told Shahade that Ramirez was known to bring a 'sex slave' to tournaments" (¶ 128); "another US Chess member reports that she personally informed US Chess about concerns relative to Ramirez in 2017" (¶ 129).

These inflammatory sentences lack any actual factual foundation and cannot be used to avoid dismissal of Plaintiff's fanciful RICO claims, especially because the alleged witnesses/members are not parties to the case or even identified by name. Allowing Plaintiff's human trafficking RICO claim to proceed based on these weightless allegations would be manifest injustice to US Chess, because it would require years of discovery into these overbroad and irrelevant allegations to determine, then depose, the non-parties from whom Plaintiff seeks to use to create a sweeping RICO criminal conspiracy.

Likewise, the new allegations in the FAC are insufficient to state a RICO claim based on Human Trafficking because, at most, they allege that US Chess was aware that Timur Gareyev assaulted the anonymous victim, and she was not satisfied with US Chess's response to provide her with an escort at its tournaments. Whether or not US Chess's initial response went far enough to prevent future actions by Gareyev, providing an escort to keep Gareyev away is the opposite of taking affirmative actions for the purpose of assisting Gareyev as part of a human trafficking conspiracy.[3]

Likewise, although it is not true, if we assume for the purposes of this motion that US Chess failed to investigate or discouraged reporting, that is a far cry from US Chess conspiring with Alejandro Ramirez and engaging in a criminal act in support of an enterprise that exists for Ramirez's sexual pleasures. These are highly offensive and preposterous allegations. Importantly, at all times, Ramirez's and Gareyev's alleged victims could have and should have reported any crimes against them – US Chess is not the police, and it is not responsible for crimes that third

---

[3] Upon investigation, and well before Plaintiff filed her original Complaint, US Chess revoked Gareyev's membership and banned him from attending its events, - the opposite of engaging in a conspiracy with him. *See* https://new.uschess.org/sites/default/files/media/documents/sanctionedmembers_november2024-mmedit.pdf

party individuals allegedly committed just because they were attending chess tournaments at the time.

<b><u>CONCLUSION</u></b>

For all of the reasons set forth herein and in its initial moving papers, US Chess respectfully requests that the Court deny Plaintiff's motion seeking leave to file an Amended Complaint.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07724


By:  /s/ *Joseph C. DeBlasio*
        Joseph C. DeBlasio
        Michael A. Tecza

Dated:  July 7, 2025

4934-5270-6899, v. 1